51 CCPA

**GENERAL PRECISION, INC., Appellant,**

v.

**Tab T. THEIN, by Change of Name from Tibor J. Thein, d.b.a. Lib-Re-Search Service, Appellee.**

**Patent Appeal No. 7152.**

United States Court of Customs and Patent Appeals.

March 12, 1964.

Russell L. Law, James Atkins, Washington, D. C., Theodore H. Lassagne, Glendale, Cal., Jas. M. Naylor, Naylor & Neal, San Francisco, Cal., for appellant.

Tab T. Thein, pro se.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Trademark Trial and Appeal Board, 135 USPQ 478, dismissing an opposition to an application [1] to register LIB-RE-SEARCH for educational services such as the preparation of scientific, literary, historical reports and bibliographies for others; abstracting, reviewing and translating articles and literary works for others. Appellee-applicant alleges use of the mark since April 4, 1958.

Appellant opposes the registration on the grounds that "the mark sought to be registered was confusingly similar (a) to its trademark LIBRASCOPE used upon scientific instrument and apparatus, including computers of various kinds, control systems and the components thereof, and (b) the use of LIBRA-SCOPE to identify services rendered to customers."

Appellant is the owner, by virtue of a merger agreement, of registrations of LIBRASCOPE for balance computers, anti-aircraft fire control computers, sonar position keepers, tristimulus integrators, integrators, operational recorders, magnetic amplifiers, potentiometers, can filling machines, graph paper, and the like.[2] Appellant has taken and filed testimony and a number of documentary exhibits. It appears therefrom that appellant, through its predecessor, Librascope, Incorporated, and through its Librascope Division, has, since at least 1939 continuously used LIBRASCOPE as the distinguishing feature of a trade name and as a trademark for various types of computers, and other scientific instruments and apparatus designed for and sold to both industry and the Government. The business conducted by appellant and its predecessor rose from about five hundred thousand dollars by 1941, to two million dollars in 1945, and to around sixty million dollars by 1960. At about 1945 or 1946, assertedly because of the need for maintenance and instructional manuals to accompany its equipment, appellant started with a very strong emphasis towards creating and writing its own maintenance manuals, its own instructional manuals, with every machine it put out. In or around 1950 appellant entered into arrangements with governmental agencies and others to conduct research and studies on special-

1. Serial No. 72,327 filed April 27, 1959.

2. Reg. No. 372,767, issued Nov. 14, 1939, renewed; Reg. No. 587,287, issued Mar. 23, 1954; Reg. No. 612,471, issued Sept. 20, 1955; Reg. No. 620,318, issued Jan. 31, 1956; and Reg. No. 643,924, issued Apr. 9, 1957.

ized scientific and technical equipment and apparatus within its field and prepare technical reports on its investigations.

Appellant argues that LIBRASCOPE is both arbitrary and fanciful and deserving of a measure of protection sufficient to exclude appellee's LIB–RE–SEARCH from the register. Appellant states that LIBRASCOPE and LIB–RE–SEARCH are both three syllable words and that their prefix portions have much in common. Although it is not argued that the suffix portions of the marks comprising SCOPE and SEARCH look alike or have similar significance, appellant argues that the suffixes when couched in the environment of similar prefixes do have some similarities in sound or phonetics. Appellant argues that the board chose to ignore the broader, common area of services rendered by the parties and thus "failed to appreciate that the differences in the services were in specie rather than genus." Appellant contends that while "it may be true that the better portion of Appellee's services have been rendered for college students, it is apparent that not all services were performed for that class of customers and, even so, the college student of today is the businessman of tomorrow and the Appellee's audience is, therefore, a broadening one and includes Appellant's customers of tomorrow."

Appellee, on the other hand, argues that LIBRASCOPE and LIB–RE–SEARCH should be considered as a whole and when so considered are so significantly distinct in connotation, sound and appearance as to exclude confusing similarity. Appellee contends that the respective marks are used for discriminating customers and that such customers would not be deceived as to the origin of appellee's services.

The issue here is whether use by appellee of LIB–RE–SEARCH on its services is likely to cause confusion, mistake or deception because of the concurrent use by appellant of LIBRASCOPE on its goods and services. We think that such confusion, mistake or deception is not likely.

We believe that the board has reasonably analyzed the goods and services of the parties in stating:

" * * * While opposer's 'LIBRASCOPE' publication activities and applicant's 'LIB-RE-SEARCH' services may broadly be considered to overlap in view of applicant's use of the term 'scientific' in its identification of services, they, nevertheless, involve vastly different kinds of services. Insofar as the record shows, opposer's 'LIBRASCOPE' publication activities or services pertain primarily to conducting training programs, preparing instruction manuals, trainee guides and like material for many of its customers relating to the use and operation of scientific equipment and apparatus of its manufacture and to conducting basic or primary research in its particular field and preparing reports on its findings. Applicant's 'LIB-RE-SEARCH' services, on the other hand, involve research in general based upon findings of others as reported in published material."

The board goes on to say:

"The nature of applicant's services can be readily ascertained from his advertising material which is primarily directed to students. In his advertisements, he states:

'Let us dig it for you! For your term papers and assignments, our research specialists prepare individual, condensed reports, select bibliographies. * * * LIB-RE-SEARCH Reports, Bibliographies are to the point, consciencious, replete with valuable information. No ghostwriting!' "

We believe the users of appellee's services which are apparently primarily students and the people in industry and Government who apparently are the principal users of appellant's equipment and services clearly fit the classification of discriminating purchasers.

Coming now to the marks themselves, LIBRASCOPE and LIB-RE-SEARCH are so different in sound, spelling, appearance and meaning as to preclude any likelihood of confusion, mistake or deception.

For the above reasons we affirm the decision of the board.

Affirmed.

SMITH, Judge (concurring).

The differences in sound, appearance and suggestive connotation of the marks in issue are sufficient, in my opinion, to warrant affirmance of the board's decision without considering the differences in the goods and without relying on the so-called "discriminating purchaser" theory.